## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| | : | |
| WESTPORT INSURANCE | : | |
| CORPORATION, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 12-CV-03998-JEC |
| v. | : | |
| | : | |
| LITTLE AND SMITH, INC., and | : | |
| AMBAR TORRES, in her capacity as | : | |
| assignee of ATLANTIC TOWER | : | |
| SERVICES, | : | |
| | : | |
| Defendants. | | |

## WESTPORT'S REPLY IN SUPPORT OF
## ITS MOTION FOR SUMMARY JUDGMENT

<div style="margin-left:40%">

Stefan C. Passantino
Georgia Bar No. 565845
McKenna Long and Aldridge LLP
303 Peachtree Street, NE, Suite 5300
Atlanta, Georgia 30308

Robert P. Conlon
Douglas W. Walker
*Admitted Pro Hac Vice*
Walker Wilcox Matousek LLP
One North Franklin Street, Suite 3200
Chicago, Illinois 60606
*Attorneys for Westport Insurance
Corporation*

</div>

1

Plaintiff, Westport Insurance Corporation, by its undersigned attorneys, provides the following Reply in Support of its Motion for Summary Judgment. Dkt. 40.[1]

## I.  ARGUMENT

**A.    The 2007 Letter is a "Claim" and Little was Obligated to Provide Notice to Westport under the 2006 Policy.**

Defendants raise a number of arguments as to why the 2007 Letter is not a "claim."  Each of these arguments is legally or factually flawed and must be rejected.

### 1.    Based on the Plain Language, the 2007 Letter is a "Claim."

In their briefs, Defendants studiously avoid the plain language of the 2007 Letter which states: "this letter will place you on notice of my client's claim for damages against your agency."  Westport's State. of Mat. Facts, Dkt. 40-1 ("Westport's SMF"), ¶23.  By its very terms, this statement is a "claim for damages" against Little.

A comparison of the 2007 Letter to the 2006 Westport Policy leads to the conclusion that the letter is a "claim."  It is a "notice of a written demand" or a "written demand for money" (damages).  Additionally, it is a "written demand for

---

[1] Westport responds to the arguments made by Defendant Little and Smith ("Little") in its Brief in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. 45) ("Little's Br."), and Defendant Ambar Torres in her Brief in Response to Westport's Motion for Summary Judgment and Memorandum of Law.  Dkt. 48 ("Torres' Br.").

services" because the 2007 Letter requests that Little provide insurance information pursuant to Florida law, including a "Copy of Agents Errors and Omissions Coverage." This more than satisfies the definition of "claim" which does not require a showing that the potential cause of action is meritorious, or that an insured provide every detail in its initial notice.

It is also important to remember that when it received the 2007 Letter, Little had already been informed of the accident involving Torres and ATS. Westport's SMF, ¶7. Little was aware the accident was serious with persons sustaining "fatality & injuries." Declaration of Douglas W. Walker, Dkt. 40-19 ("Walker Decl."), Ex. B. Perhaps most importantly, Little was aware that ATS and its primary insurer Hartford believed that Little had placed an umbrella policy which would provide coverage for the accident. *Id.* To that, Little responded that it had placed "excess general liability only, not an umbrella." *Id.* When viewed in the context of this additional information, the conclusion that the 2007 Letter is a "claim" is even more compelling.

## 2.     The Definition of "Claim" is not Ambiguous.

Defendants' ambiguity argument is simply a repeat of the argument in Little's motion for summary judgment. *See* Brief in Support of Def. Little and Smith's Mot. for Summ. Judg., Dkt. 41-1, at 7-8. Without re-hashing its entire

opposition brief,[2] Westport submits that definition of "claim" is unambiguous and Defendants' argument is wrong for at least three reasons.

First, this Court does not need to address the ambiguity argument because, even under Defendants' construction,[3] the 2007 Letter is a "claim."  It is a written demand for money in that it states a "claim for damages" against Little.  Little asserts the letter is not a "claim" because it does not contain a demand for a "sum of money" but the word "sum" does not appear anywhere in the definition.  Little's Br. at 5.

Second, Defendants' reading ignores the plain, ordinary meaning of "or" which is contrary to Georgia's rules of contact construction.  Using the common, disjunctive meaning of "or" makes sense in the context of the surrounding policy language.  The definition of "claim" provides a choice among three alternatives: a "claim" can be a "notice of written demand," a "written demand for money," or a "written demand for services."

Third, reading "or" to mean "that is to say" as Defendants propose results in an unreasonable construction.  If "or" merely clarifies "notice of a written demand," those words will not be given full effect.  Essentially, Defendants'

---

[2] Westport's argument is set forth in its entirety in its Opposition to Little's Motion for Summary Judgment at 7-13. Dkt 46. ("Westport's Opp'n. Br.").

[3] The 2006 Policy defines "claim," in part, as where "an insured has received notice of a written demand, or a written demand for money or services."  Westport's SMF, ¶45.  Defendants' proposed reading is "that an insured has received notice of a written demand, *that is to say*, a written demand for money or services."  Little's Br. at 5.

interpretation would delete the phrase "notice of a written demand" from the "claim" definition.  Georgia law does not allow such a result, as insurance contracts must be "considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others." *Boardman Petroleum, Inc. v. Federated Mut. Ins. Co.*, 498 S.E.2d 492, 494 (Ga. 1998).

>        **2.      The 2007 Letter is a "Demand for Money or Services."**

Defendants' related argument – that the 2007 Letter is not a "demand" because it is not a "demand for payment" – should also be rejected.[4]  Little cites to case law which construes the term "demand" as it is used in a Georgia bad faith statute.  However, that statute does not apply and no authority is provided for the proposition that the statute or the cases interpreting it are relevant, so this Court should disregard them.  In any event, the 2007 Letter is a "demand for payment" in that it asserts a "claim for damages against your agency," Little.

Additionally, the 2007 Letter is a "written demand for services" – the author demands Little provide insurance information pursuant to a Florida statute.  The letter also demands a "Copy of Agents Errors and Omissions Coverage" which can only be read as a request for Little's professional liability policy.

---

[4] *See* Westport's Opp'n. Br. at 13-15.

Little argues that the demand for services contained in the 2007 Letter is limited to ATS' insurance information.  This of course ignores the reference to "agents" errors and omissions coverage and Little does not explain how the word "agents" can be read as a reference to ATS.  Little also cites to the affidavit of A.D. Little, specifically his statement that he understood the 2007 Letter to be requesting insurance information pertaining to ATS.  Little's Br. at 6.  However, the definition of "claim" does not refer to the insured's subjective belief; for this reason, Mr. Little's opinion on this point is irrelevant.  Additionally, Mr. Little's affidavit is subject to a separate motion to strike because it was not produced in discovery though it should have been.  *See* Westport's Mot. to Strike, Dkt. 49. Because the affidavit was not produced in discovery (or logged as privileged), Westport's counsel did not have the opportunity to question Mr. Little on the statements in his affidavit at his deposition.

### 3. Little was Obligated to Provide Notice of the 2007 Letter to Westport.

Torres contends that the 2007 Letter did not contain "sufficient minimum information" and therefore did not "trigger the duty to report" under the 2006 Policy.  Torres' Br. at 8-10.  This argument confuses the definition of "claim" with the "Reporting and Notice" provision and seriously misconstrues the policy language.

The 2006 Policy provides coverage for claims first made during the policy period.  It follows that the first step in determining if coverage exists is determining if a "claim" was made.  This requires an analysis of the definition of "claim" in the policy.

If a "claim" was made as defined in the policy, the Reporting and Notice provision obligates the insured to provide written notice "as soon as practical."  It is only at this point – after it has been determined that a "claim" was made – that the Reporting and Notice provision comes into play.  It is true that the Reporting and Notice provision requires that the insured provide certain information regarding the claim, but it does not follow that if the insured fails to provide this information, there is no "claim."  Indeed the policy identifies a number of different ways in which a "claim" can be made: a summons, a subpoena, the receipt of other notice of legal process, notice of suit, notice of arbitration or ADR, or a written demand for money or services.  Some "claims" may include more information than others but they are all "claims" as defined in the policy.  But the Reporting and Notice provision does not say "if you do not have the information listed, no claim has been made."

Torres does not cite to any cases where a court considered the notice provision of an insurance policy to determine whether a claim had been asserted in

the first instance.  In *St. Paul Fire & Marine Insurance Company v. Tinney*, 920 F.2d 861 (11th Cir. 1991), St. Paul took a position similar to Torres'.  St. Paul argued that its insured did not comply with the policy requirements because it did not provide the address of the claimants, the address of a witness and it did not provide the date, time or place of the incident in question.  *Id.* at 862-63.  The Eleventh Circuit rejected this argument, stating that the policy provision calling for background information was to "assist St. Paul in the investigation of the claim" but "cannot be used as a trap for the unwary insured."  *Id.* at 863.

The authority that Torres does rely upon is readily distinguishable.  Torres cites to *Serrmi Products* and *Simpson & Creasy, P.C.* for the proposition that it is "fundamental to 'claims made' policies" that the insured discover the alleged negligent act.  Torres Br. at 10.  *Simpson & Creasy, P.C.* relied upon *Serrmi Products* and the actual language used by that court is instructive:

> A claims-made policy is a policy wherein the coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy term.  The essence, then, of a claims-made policy is notice to the carrier within the policy period.

*Serrmi Products, Inc. v. Ins. Co. of Penn.*, 411 S.E.2d 305, 306 (Ga.App. 1991) (quotation marks and citation omitted).  Fairly characterized, the point the court was making related to when an insured must provide notice, not what constitutes a

claim. [5]  Regardless, the 2007 Letter contained sufficient information to put Little on notice of a claim.

Torres' entire discussion of "triggering the duty to report" is misdirected. The policy provides that an insured "shall provide written notice of any claim … as soon as practical."  To determine whether a "claim" has been made in the first instance, common sense and the policy dictate that this Court should look to the definition of "claim," not the Reporting and Notice provision.

**B.     The 2007 Letter and the *Torres v. Little* Lawsuit Both Arose out of the "Same Wrongful Act … or Series of Related and Continuing Wrongful Acts" – Little's Alleged Negligence in Providing Insurance Services to ATS.**

The *Torres v. Little* Lawsuit and the 2007 Letter both arose out of Little's relationship with ATS, more specifically Little's alleged negligence in providing insurance services to its client.  The *Torres v. Little* Lawsuit alleges that Little was negligent by failing to have sufficient insurance coverage in place for ATS when Torres' accident occurred.  Westport's SMF, ¶35.  Before the 2007 Letter was sent,

---

[5] Torres also cites to *Ziolkowski v. Landmark American Ins. Co.*, No. 09-CV-776, 2012 WL 503900 (M.D. Fla.), for the proposition that "it is proper for the jury to determine whether the insured had knowledge of the specific acts of negligence being asserted by the claimant in order to trigger the reporting of a claim in a claims-made policy." Torres' Br. at 11.  *Ziolkowski* holds nothing of the sort.  There, the jury returned a verdict against Landmark finding that the insured properly reported the claim.  *Id.* at *1.  In its motion for a new trial, Landmark argued that the insured's counsel improperly led the jury to believe that the issue being tried was "not whether the claim was reported, but … [rather] whether the insured reasonably believed there was a claim."  *Id.* at *2.  While it is true Landmark's motion was denied, Torres omits the fact that the court did not reach the merits of the argument.  *Id.* at *3.  Instead, the court denied the motion because Landmark failed to object to the improper statements at trial.  *Id.* The court did not discuss the proposition Torres cites to the case for.

Little had already been notified of the accident, that it involved ATS, and that ATS believed Little had placed excess auto coverage for it.  Walker Decl., Ex. B.  The 2007 Letter, in turn, referenced the accident and the fact it involved a vehicle owned by ATS, requested a copy of "Agents Errors and Omissions coverage" and further asserted "my client's claim for damages against your agency."  The logical connection between the claim asserted in the 2007 Letter and the *Torres v. Little* Lawsuit is Little's relationship with ATS and Little's alleged failure to procure excess auto coverage.  This is the "wrongful act" or "series of related or continuing wrongful acts" which gives rise to both claims.

Little's "relation back" argument is flawed,[6] beginning with its misstatement of Georgia rules of contract construction.  Simply because "related" is not defined, it does not mean that this Court must construe it "in its most narrow sense;" rather, according to the Georgia legislature, words are to be given their "usual and common signification."  Ga. Code Ann. § 13-2-2(2) (West 2013); *see also, Tripp v. Allstate Ins. Co.*, 584 S.E.2d 692, 694 (Ga.App. 1970) ("[U]nambiguous terms of an insurance policy require no construction, and the plain meaning of such terms must be given full effect.") (quotation marks and citation omitted).

---

[6] Torres' "relation back" argument is also flawed but for a different reason: Torres focuses on the "same 'wrongful act,'" ignoring the "series of related or continuing" acts language.  Torres' Br. at 12-14.  Westport previously addressed this argument in its opposition to Little's motion.  Westport's Opp'n Br. at 17-21.

The Eleventh Circuit has defined "related" as encompassing both logical and causal connections between two events or acts. *Continental Cas. Co. v. Wendt*, 205 F.3d 1258, 1262 (11th Cir. 2000) ("The words 'relate' or 'related' are commonly understood terms in everyday usage. They are defined in the dictionary as meaning a 'logical or causal connection between' two events."); *Westport Ins. Corp. v. Key West Ins., Inc.*, 259 Fed.Appx. 298, 300 (11th Cir. 2007) ("The word related covers a very broad range of connections both causal and logical.") (quotation marks and citation omitted). Little's acts or omissions were all "logically connected" or related as part of Little's professional relationship with ATS. Because they were all part of Little's ongoing relationship with ATS, they were also part of "a series of ... continuing 'wrongful acts.'"

Little cites to cases from several jurisdictions in support of its overly narrow construction of "related." Little's Br. at 11-16. However, Little offers no reason why this Court should follow those cases and ignore well-established Eleventh Circuit precedent.

**C.    Little's 5 Year Delay in Providing Notice was not "Reasonably Justified."**

Finally, Defendants incorrectly argue that assuming the 2007 Letter and the *Torres v. Little* Lawsuit are a single "claim" first made during the 2006 Policy, Little's five year delay in providing coverage was "reasonably justified." Little's

11

Br. at 20-23; Torres' Br. at 14-17.  The first of several problems with this argument is that it makes no sense when applied to this case.  "Reasonable justification" excuses an insured's failure to provide notice of an occurrence or accident before they have resulted in claims.  It is a defense that was developed to address the sometimes harsh results under occurrence based policies where there can be a lag between the time of an occurrence and when a claim is asserted against the insured. *See Simpson v. Creasy, P.C. v. Continental Cas. Co.*, 770 F.Supp.2d 1351, 1354 (S.D.Ga. 2011) (noting that under an occurrence policy, coverage is triggered by an occurrence or injury during the policy period).  By contrast, the Westport Policies are claims made, meaning they only provide coverage to claims first made during the policy period.  "Reasonable justification" should not be applied in a situation like this one, where an insured has failed to provide notice of a "claim." [7]

As explained by the court in *Forshee v. Employers Mutual Casualty Company*, a case heavily relied on by Defendants, "an insured is not required to foresee every possible claim not matter how remote that might arise from an event … So, if a reasonable and prudent person would conclude that an event forms no basis for a possible claim, the failure of the insured to give notice of the event is justified."  711 S.E.2d 28, 31 (Ga.App. 2011) (emphasis added).  The doctrine

---

[7] For purposes of this argument, Defendants admit that the 2007 Letter constitutes a "claim."  Defendants have not cited a case where a court allowed an insured to assert "reasonable justification" as an excuse to a failure to provide timely notice under a "claims made" policy.

applies to protect an insured where an "event" (or accident or occurrence) has

taken place but no claim has been made as evidenced by the references to "possible

claim."  Indeed, all of the cases relied on by Defendants deal with the failure to

provide notice of an occurrence or an accident which has not yet given rise to a

claim.  That is markedly different from this case which deals with Little's failure to

provide notice of a "claim."  In the "reasonable justification" cases, one factor a

court will consider is whether anyone indicated an intent to hold the insured

responsible.  *Id.*  This further supports limiting the defense to pre-claim situations

and occurrence policies because such an analysis makes no sense where a claim

has already been made against the insured.

In *Forshee* the claimant fell on the premises of the insured who owned a gas

station.  Upon seeing the fall, the insured Forshee helped the claimant to her car

and offered medical assistance which the claimant refused.  *Id.* at 30.  There was

no further contact between the parties for two years when the claimant filed a

lawsuit seeking damages for injuries allegedly sustained in the fall.  *Id.*  Forshee's

liability insurer filed a declaratory judgment action, arguing that Forshee failed to

comply with the policy which required notice of an "occurrence" "as soon as

practicable."  The court held that Forshee acted reasonably in not providing notice

at the time of the fall:

> The victim refused all offers of medical assistance, walked on her own back to her car, and told Mr. Forshee she was going home.  She did not indicate that she believed Forshee Chevron was responsible for her fall, and she did not ask Mr. Forshee for his insurance information or even for his name.

*Id.* at 32-33.  In this case, the 2007 Letter expresses an intent to hold Little responsible by placing Little on notice of a "claim for damages."  The 2007 Letter additionally requests insurance information, including "Agents Errors and Omissions coverage."  Both of these elements were absent in *Forshee*.

Another problem for Defendants is that under Georgia law, an insured cannot use reasonable justification as an excuse where the justification is the insured's subjective belief that it does not face liability.  *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 231 S.E.2d 245, 249 (Ga.App. 1976), *quoting Bituminous Cas. Corp. v. J. B. Forrest & Sons, Inc.*, 209 S.E.2d 6, 9 (Ga.App. 1974) ("Justification for failure to give notice as soon as practicable, however, may not include the insured's conclusion 'that he was free of fault and that there was no liability to the other party. That is the very issue which the company must have reasonable opportunity to investigate with promptness, and which requires a prompt notice of the occurrence.'").  Throughout their briefs, Defendants refer to the vague and uncertain nature of the claim asserted and the lack of any duty owed by Little.  Little did not believe that the "claim for damages" asserted in the 2007 Letter had merit, so it did not report it to Westport (although it did feel the need to

involve its attorney).  But, under Georgia law, this excuse is not "reasonable

justification" and it cannot absolve Little of its failure to comply with the policy.

Little also argues that the question of whether an insured acted reasonably in

failing to provide timely notice is one of fact.  Little's Br. at 21.  It is equally true,

however, that "it may be found that an insured's delay in giving notice of an

accident to his insurer was unjustified and unreasonable as a matter of law."

*Plantation Pipeline Co. v. Royal Indem. Co.*, 537 S.E.2d 165, 168 (Ga.App. 2000)

(quotation marks and citation omitted).  And under Georgia law, courts have found

that delays of four months to one year preclude recovery as a matter of law.

*Illinois Union Ins. Co. v. Sierra Contracting Corp.*, 744 F.Supp.2d 1349, 1352

(N.D.Ga. 2010).  Here five years elapsed.[8]

Lastly Little argues that it acted reasonably because A.D. Little "personally

believed" that the 2007 Letter did not constitute a "claim" or "potential claim"

Little's Br. at 23.  As discussed previously, Mr. Little's affidavit is the subject of a

separate motion to strike because it was not produced in discovery.  Moreover,

Little testified in his deposition that he did not review the 2006 Policy when he

---

[8] Torres also attempts to create a fact question by speculating as to the motivations of Hajipour's counsel (who authored the 2007 Letter) and Little's counsel (who responded to the letter).  Torres' Br. at 16.  This argument is particularly disingenuous.  It was Torres' counsel who claimed to need extra time in order to depose these two individuals before responding to Westport's summary judgment motion.  Dkt. 28.  After getting the extension, counsel chose not to take the depositions for unknown reasons.  He should not now be allowed to speculate as to what those depositions might have revealed.

received the 2007 Letter, a fact which Defendants have admitted.  Westport's

SMF, ¶26.  This admission calls into question Mr. Little's statement that the letter

was not a "claim" or "potential claim" and his conclusion that the letter did not

require notice under the Westport policy.  Aff. of A.D. Little, ¶¶6, 7.  For these

reasons, Mr. Little's affidavit should not be given any evidentiary weight.

**D.      Westport is Entitled to Judgment on Torres' Counterclaim.**

In its motion, Westport requested judgment on Torres' Counterclaim for two

reasons: (1) because the Westport Policies do not provide coverage to Little for the

*Torres v. Little* Lawsuit; and (2) Torres does not have standing to seek a ruling

enforcing the parties' rights and obligations under the policies.  Westport's Memo.

of Law in Support of its Mot. for Summ. Judg., Dkt. 40-2, at 27-29.  Torres has not

opposed or otherwise responded to Westport's standing argument; therefore

Westport is entitled to judgment on that basis.  *See* L.R. 7.1(B).

## IV.  CONCLUSION

For the reasons set forth above, and for those set forth in its Motion for

Summary Judgment and in opposition to Little's motion, Westport requests that

this Court grant its Motion for Summary Judgment.

Dated: September 13, 2013                    Respectfully submitted,

                                              /s/ Douglas W. Walker
                                             Stefan C. Passantino
                                             Georgia Bar No. 565845
                                             spassantino@mckennalong.com
                                             McKenna Long and Aldridge LLP
                                             303 Peachtree Street, NE
                                             Suite 5300
                                             Atlanta, Georgia 30308
                                             (404) 527-4000

                                             and

                                             Robert P. Conlon
                                             rconlon@wwmlawyers.com
                                             Douglas W. Walker
                                             dougwalker@wwmlawyers.com
                                             *Admitted Pro Hac Vice*
                                             Walker Wilcox Matousek LLP
                                             One North Franklin Street
                                             Suite 3200
                                             Chicago, Illinois 60606
                                             (312) 244-6700

                                             *Attorneys for Plaintiff,*
                                             *Westport Insurance Corporation*

## **FONT CERTIFICATE**

I certify that this pleading was prepared using a font and point selection approved by the Court in Local Rule 5.1 C.

 /s/ Douglas W. Walker
Douglas W. Walker

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

|  |  |  |
|---|---|---|
| WESTPORT INSURANCE CORPORATION, | : | |
|  | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | Case No. 1:12-CV-03998 |
| v. | : | |
|  | : | |
| LITTLE AND SMITH, INC., and AMBAR TORRES, in her capacity as assignee of ATLANTIC TOWER SERVICES, | : | |
|  | : | |
|  | : | |
|  | : | |
| Defendants. | | |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of September, 2013, I have

electronically filed Westport's Reply in Support of its Motion for Summary

Judgment by using the CM/ECF system, which will automatically send e-mail

notification of such filing to the following attorneys of record:

> Joseph C. Parker
> parker@downeycleveland.com
> Calvin P. Yaeger
> yaeger@downeycleveland.com
> Downey and Cleveland
> 288 Washington Ave.
> Marietta, Georgia 30060

19

Lee D. Gunn, IV
lgunn@gunnlawgroup.com
Scott A. Arthur
sarthur@gunnlawgroup.com
Gunn Law Group, P.A.
Suite 2050
400 N. Ashley Drive
Tampa, Florida 33602

James J. Leonard
jim.leonard@btlaw.com
Barnes and Thornburg LLP
Suite 1700
Prominence in Buckhead
3475 Piedmont Road, NE
Atlanta, Georgia 30305

  /s/ Douglas W. Walker
Robert P. Conlon
rconlon@wwmlawyers.com
Douglas W. Walker
dougwalker@wwmlawyers.com
Admitted *pro hac vice*
Walker Wilcox Matousek LLP
One North Franklin Street
Suite 3200
Chicago, Illinois 60606
(312) 244-6700